UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
HERRICK LIPTON,                                 :
                                                :
                Plaintiff,          :   11 Civ. 2535 (TPG)
                                                :
      – against –                             :   **OPINION**
                                                :
NEW YORK UNIVERSITY COLLEGE OF                  :
DENTISTRY and DR. ANDREW                        :
SPIELMAN,                                       :
                                                :
                Defendants.         :
                                                :
------------------------------------------------x

      Plaintiff Herrick Lipton brings this action against defendants New York University College of Dentistry ("NYUCD") and Dr. Andrew Spielman, its associate dean for academic affairs, for alleged violations of federal, state, and local laws banning discrimination against disabled individuals.

      Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss the federal counts for failure to state a claim. Should the court grant this motion, defendants further move to dismiss the remaining state law claims for lack of subject matter jurisdiction. Both motions are granted.

## The Complaint

      The following facts are drawn from the complaint and assumed to be true for purposes of this motion.

      Plaintiff entered NYUCD's predoctoral dentistry program ("DDS program") in August of 2000. Had plaintiff completed the program on schedule, he would have graduated in 2004. However, plaintiff was unable to successfully complete

his first academic year, which plaintiff alleges was the result of his father's terminal illness. Plaintiff was then dismissed from the DDS program, but he successfully appealed this decision and completed the first-year curriculum on his second attempt in June 2002. Thereafter, he completed the second year of the curriculum on his first attempt in June 2003.

In July 2003, plaintiff took Part I of the National Board Dental Examination ("NBDEP1") to fulfill a degree requirement for NYUCD. Unfortunately, he failed some sections of the test and was required to retake them. In the meantime, he began his third academic year at NYUCD in August 2003.

During that year, plaintiff prepared to retake the NBDEP1. He also participated in clinical work, for which he earned praise and high marks from his supervising professors. However, plaintiff failed the NBDEP1 on his second attempt.

Plaintiff began his fourth academic year at NYUCD in August 2004. In May 2005, plaintiff underwent a neuropsychiatric evaluation, as a result of which, according to complaint ¶ 27:

> Plaintiff was diagnosed with a learning disability, specifically a reading disorder which hindered his ability to accurately read and comprehend information under time constraints. The evaluation noted that Plaintiff suffered from anxiety and apprehension such that he would be unable to pass the exam under the normal time constraints. The disability (which was exacerbated by time constraints) placed Plaintiff at a disadvantage in successfully completing the test. The evaluation recommended for Plaintiff to receive additional time to alleviate the stress and anxiety of the exam, which would serve to equalize him with the other candidates sitting for the exam.

The complaint (¶ 28) goes on to allege that, after requesting an accommodation from test administrators:

> Plaintiff, with the accommodation, immediately passed all parts of NBDEP1 with a time-and-a-half accommodation following the conclusion of his fourth academic year.

It also appears that plaintiff was afforded this same time-and-a-half accommodation when he took all the tests which are relevant to the present case. [1]

During plaintiff's fourth academic year, he was also required to take the North East Regional Board of Dental Examiners exam ("NERB"), which he passed. Having completed the academic coursework of the DDS program, plaintiff participated in its graduation ceremony on May 12, 2005.

Plaintiff, however, had not yet completed all of the requirements for his degree. There remained Part II of the National Board Dental Examination ("NBDEP2"). Pursuant to NYUCD policy, all dental students (beginning with the class of 2004) are required to pass this test to graduate. That same policy specifies that candidates taking the NBDEP2 after finishing their academic coursework must re-matriculate for the academic year when the exam will be taken. For plaintiff, this meant mainly the payment of $3500 in fees. Lastly, the policy requires such students to pass the NBDEP2 within fourteen months of finishing their coursework. In contrast, until recently the American Dental Association, which administers the NBDEP2 through a sub-agency, permitted

---

[1] The complaint does not explicitly state that the plaintiff received time-and-a-half on each test occasion discussed *infra*, but ¶ 56 of the complaint alleges that NYUCD's actions "rendered the time-and-a-half accommodation meaningless," implying that plaintiff in fact received such an accommodation.

eligible examinees to retake the NBDEP2 an unlimited number of times so long as the examinee waited the requisite interval between attempts.[2]

Plaintiff paid $3,500 to re-matriculate in September 2005, and he took the NBDEP2 that very month. Unfortunately, plaintiff failed the exam and was required by American Dental Association protocol to wait at least ninety days before retaking it.  The complaint (¶ 38) offers the following explanation for this outcome:

> Anxiety and stress due to the short preparation period, financial concerns, and the constant threat of dismissal, from the re-matriculation exacerbated his disability and hindered his ability to concentrate during the examination.

In September 2006, plaintiff again paid $3,500 to re-matriculate and take the NBDEP2, and in December 2006, he again took and failed the test. The complaint (¶ 41) alleges:

> Anxiety about the financial constraints re-matriculation was placing on his family, the constant threat of dismissal, and concerns about how this financial burden could limit his continued eligibility to sit for the exam, exacerbated his disability and prevented him from successfully completing NBDEP2 in April 2007.

Plaintiff re-matriculated a third time in September and took the NBDEP2 a third time in April 2007. Again he failed. He alleges (¶ 44):

> Again, concerns about the constant threat of dismissal, his financial situation and his inability to afford the costs of re-matriculation prevented Plaintiff from passing NBDEP2.

Plaintiff was then dismissed from the DDS program on May 14, 2007, for

---

[2] It now requires that examinees pass the test within five years of their first test attempt or five attempts, whichever comes first. But only test attempts on or after January 12, 2012 trigger this rule.

failing to pass the NBDEP2 within the time allotted by NYUCD policy. Plaintiff appealed that decision internally, submitting a letter informing the internal appeals committee of his reading disorder and other issues impeding his performance. Plaintiff was then granted an additional year, until June 2008, to pass the NBDEP2 or "face permanent dismissal from the program" (Compl. ¶ 49).

Since plaintiff had failed the NBDEP2 three times, American Dental Association rules required him to wait a full twelve months, until April 2008, before retaking the exam for a fourth time. According to the complaint (¶ 54):

> Plaintiff sat for the exam in May 2008 under severe emotional stress and anxiety over his potential dismissal due to the arbitrary time constraints placed on him by NYUCD which again served to exacerbate his disability. He failed NBDEP2 by three (3) points.

Plaintiff was dismissed from the DDS program on June 27, 2008. Plaintiff again appealed his dismissal, and on appeal, he requested "an accommodation, in which he would be given additional opportunities to take the exam due to his learning disability, specially his troubles with critically reading and comprehending the exam within the time constraints" (Compl. ¶ 56). The complaint (¶ 56) goes on to state the following rationale for the requested accommodations:

> Plaintiff's disability and its effect on his ability to take the exam was exacerbated by NYUCD's repeated threats of dismissal, its varying position in terms of the number of attempts he would be provided to retake the exam, the significant costs of repeated re-matriculation, and NYUCD's wavering position with regard to the number of times he could take the exam and whether he would be dismissed, rendered the time-and-a-half accommodation meaningless. NYUCD was well aware that Plaintiff's disability

was exacerbated by time pressure of any manner, which increased his anxiety and apprehension, and ultimately rendered him unable to focus and critically read during the exam.

But NYUCD held firm in its decision to dismiss plaintiff from the DDS program, leading to the present case.

Based on these allegations, plaintiff makes seven claims. First, plaintiff alleges that NYUCD violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12182(a), 12112(b)(5)(A) by failing to provide the requested accommodations. Second, plaintiff alleges that NYUCD, an entity that receives federal assistance, violated the Rehabilitation Act, 29 U.S.C. § 794(a), by failing to accommodate his disability. Plaintiff's next four counts allege analogous violations of New York State Human Rights Law, N.Y. Exec. Law § 296(6), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-102(16). Two of the counts are against NYUCD, and two are against individual defendant Spielman. Plaintiff's final count alleges that NYUCD's inconsistent statements concerning the number of times plaintiff would be allowed to take the NBDEP2 constituted deceptive acts or practices in the conduct of business in violation of N.Y. Gen. Bus. Law § 349.

### The Prayer for Relief

In addition to damages and attorneys' fees, plaintiff seeks injunctive relief as follows:

> 101. Reinstatement to NYUCD and an accommodation permitting Plaintiff to retake NBDEP2, without re-matriculation, an unlimited number of times over a reasonable period of time, pursuant to applicable American Dental Association guidelines, thereby providing him with a reduced-stress environment in

which he can concentrate and focus effectively.
102. Waiver of graduation requirements, based on his disability, which would enable him to retake NBDEP2 an unlimited number of times, pursuant to applicable American Dental Association guidelines.

### The Present Motions

Defendants now move to dismiss the two federal counts on the ground that the accommodations now requested by plaintiff are unreasonable as a matter of law, since they would force NYUCD to fundamentally alter academic requirements. Defendants further argue that since the two federal claims should be dismissed, the court should decline to exercise supplemental jurisdiction over the state law claims per 28 U.S.C. § 1367(c)(3).

### Discussion

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). In deciding such a motion, a court must accept as true the facts alleged in the complaint, but it should not assume the truth of legal conclusions. Iqbal, 129 S.Ct. 1937 at 1950. A court must also draw all reasonable inferences in the plaintiff's favor, and it may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

\*\*\*

The ADA was passed to "provide a clear and comprehensive national

mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  Titles II and III of the ADA, upon which plaintiff relies, forbid the denial of public services and public accommodations, respectively, to otherwise qualified individuals by reason of their disability. See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). The Rehabilitation Act similarly provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

    The ADA was modeled upon the Rehabilitation Act and due to the similarities between the two, claims under both can be analyzed identically unless a difference between the statutes is germane to the case. See Weixel v. Bd. of Educ., 287 F.3d 138, 146 n. 6 (2d Cir. 2002). Here, plaintiff's claim under the Rehabilitation Act differs from that under the ADA only insofar as plaintiff seeks damages from NYUCD under the Rehabilitation Act—a remedy not available under the ADA. That difference, however, does not implicate the present motion, so the court will henceforth treat these claims in tandem.

    To state a claim under the Acts, plaintiff must plausibly allege that (1) he is a qualified individual with a disability; (2) the defendants are subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities by reason of his disability. See Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004).

A qualified individual with a disability is one who "with or without reasonable modifications to rules, policies, or practices...meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided" by the covered entity. 42 U.S.C. 12131(2). Said individual must also have a disability, which the ADA defines as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Mastrolillo v. Connecticut, 352 Fed. Appx. 472, 474 (2d Cir. 2009).

According to the complaint, plaintiff was qualified to enroll in the DDS program and to take the courses offered there. The complaint thus successfully alleges that plaintiff was a qualified individual within the meaning of the law.

The complaint also alleges another element necessary to the cause of action—a disability. This disability is defined in ¶ 27 of the complaint, which has been quoted above, as being "a reading disorder which hindered his ability to accurately read and comprehend information under time constraints." Later parts of the complaint, which have also been quoted in the opinion (¶¶ 41, 54, 56), state that various circumstances exacerbated the disability defined in ¶ 27. For the purposes of the present motion, the court accepts the idea that plaintiff suffered an impairment that substantially limited a major life function—to wit, reading.

As for the second factor, NYUCD concedes that it is a public accommodation offering a service under 42 U.S.C. § 12182 and that it is a

program receiving federal financial assistance for purposes of the Rehabilitation Act.

Thus the present motion hinges on whether plaintiff plausibly alleges that he was unlawfully denied the opportunity to continue participating in NYUCD's DDS program by reason of his disability. Plaintiff can do so using one of three theories: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). Plaintiff has chosen the third route.

Reasonable accommodations are "affirmative accommodations to ensure that facially neutral rules do not in practice discriminate against individuals with disabilities." Henrietta D., 331 F.3d at 275. The "determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995).

A defendant, however, "need not make an accommodation at all if the requested accommodation would fundamentally alter the nature of the service, program, or activity." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 88 (2d Cir. 2004). Moreover, a court should defer to an academic institution's decision that a particular accommodation is not reasonable when it has "diligently assessed the available options and then made an academic judgment...that to accommodate the student would work a change in the substance of

its…program, and impose an undue hardship on its academic program." Id. Indeed, institutions of higher learning "must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." Board of Curators, Univ. of Mo. v. Horowitz, 435 U.S. 78, 96 n. 6 (1978).

Here, defendants claim that plaintiff requested a waiver of a graduation requirement, and that NYUCD determined that such a waiver would substantially and unreasonably alter its program. Accordingly, they argue that the court should defer to this academic decision and dismiss plaintiff's complaint. Plaintiff, on the other hand, claims that the accommodations he requests are reasonable. He argues that he is asking nothing more than an accommodation that is consistent with guidelines offered by the American Dental Association.

It is important at this point to clarify that as an academic institution, NYUCD is free to impose standards more stringent than those of the American Dental Association. It is not the business of the court to adjudge the wisdom of generally-applicable academic policies. Thus NYUCD acted within its rights when it created policies requiring that: a) all students pass the NBDEP2; b) all students taking the NBDEP2 after completing academic coursework re-matriculate and pay tuition to sit for the exam; and c) all re-matriculating students pass the NBDEP2 in a limited period of time.

The only question before the court is whether plaintiff's complaint— which alleges that defendants, despite knowing of plaintiff's reading disorder

and his requested accommodations, dismissed plaintiff for failing to pass the NBDEP2 within the requisite time period—states a plausible claim of disability discrimination under the ADA and the Rehabilitation Act. The court holds that it does not, because the accommodations that plaintiff requests are unreasonable as a matter of law.

Plaintiff has already received an accommodation of his disability in the form of time-and-a-half to complete the exams he has taken. He is now requesting additional accommodations, as specified in the prayer for relief in the complaint:

> 101. Reinstatement to NYUCD and an accommodation permitting Plaintiff to retake NBDEP2, without re-matriculation, an unlimited number of times over a reasonable period of time, pursuant to applicable American Dental Association guidelines, thereby providing him with a reduced-stress environment in which he can concentrate and focus effectively.
> 102. Waiver of graduation requirements, based on his disability, which would enable him to retake NBDEP2 an unlimited number of times, pursuant to applicable American Dental Association guidelines.

Thus, among other things, plaintiff's requested accommodations change the focus from the time allowed for an <u>individual test</u> to the time—in terms of months or years, and number of opportunities—to take and pass the NBDEP2.

Of course, NYUCD has already afforded plaintiff almost three years beyond his projected 2005 graduation date to take the test, and he has taken the test four times. Whether or not NYUCD's actions were accommodations to plaintiff's disability within the meaning of the ADA and the Rehabilitation Act, these extensions of time and additional opportunities to take the test occurred.

In any event, plaintiff claims that the law requires more. The court

believes that these claims should be ruled on as a matter of law on the present motion.

The court holds that the requested accommodations are unreasonable in several respects. First, they would alter important academic policies to a great degree. Plaintiff's requested accommodations would indefinitely extend his time to complete NYUCD's academic courses, in defiance of NYUCD policy. NYUCD has a right to impose a time in which its graduation requirements must be completed. Such time periods have the obvious and important purpose of contributing to the discipline and rigor desirable in a professional education. Plaintiff requests a "reasonable" period of time in which to take the NBDEP2, but the complaint necessarily implies that the two-and-a-half year period already afforded him was not reasonable. The court disagrees. The extension sought by plaintiff amounts to, in plaintiff's words, a "waiver of graduation requirements," which under the circumstances of the case, the law does not impose on NYUCD.

Second, the requested accommodations bear a tenuous relationship to plaintiff's disability. The earlier time-and-a-half accommodation clearly addressed a "reading disorder which hindered his ability to accurately read and comprehend information under time constraints." The accommodations now requested do not appear to deal with the time constraints referred to in the finding of disability.

Third, the requested accommodations concern generalized anxiety, implicating not just plaintiff's disability but various circumstances upsetting to

plaintiff, including the cost of re-matriculation at NYUCD and his fear of failing the NBDEP2 and being dismissed.

Fourth, certain aspects of plaintiff's requested accommodations are clearly not contemplated by the ADA. Plaintiff seeks to retake the NBDEP2 "without re-matriculating," i.e. without paying the $3500 fee to re-matriculate. The ADA cannot be read to mandate a waiver of fees in the present case, where the fees have no bearing on the disability alleged. And, as already indicated, the same is true, under the circumstances of the present case, with regard to plaintiff's request for a "waiver of graduation requirements."

Thus, the complaint fails to state a valid claim for disability discrimination under the ADA and Rehabilitation Act, and his federal claims must be dismissed. Furthermore, the court declines to exercise supplemental jurisdiction over plaintiff's state-law claims, as there are no longer any federal claims to support original jurisdiction. See 28 U.S.C. § 1367(c)(3).

## Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted.

SO ORDERED.

Dated: New York, New York
       March 16, 2012

_____
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/12